# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| ROGER BOHNENKAMP, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> HOG SLAT, INC., et al., <br><br> Defendants. | No. C21-4014-LTS <br><br> **MEMORANDUM OPINION AND ORDER ON PLAINTIFFS' MOTION TO REMAND** |

## I. INTRODUCTION

This case is before me on a motion (Doc. 10) by plaintiffs Roger Bohnenkamp and RCB Honey Haulers, Inc. (RCB), to remand this action to the Iowa District Court for Plymouth County in accordance with 28 U.S.C. § 1447(c). Defendant Hog Slat, Inc. (Hog Slat), has filed a resistance (Doc. 13), and plaintiffs have replied (Doc. 15). Defendants USA Solutions, LLC (USA Solutions), and Kathleen Hargens have not responded to plaintiffs' motion. Oral argument has been requested but is not necessary. *See* N.D. Iowa L.R. 7(c).

## II. BACKGROUND AND PROCEDURAL HISTORY

Bohnenkamp is a wean-to-finish hog producer in Iowa. After purchasing a new group of iso-wean pigs, he places them in finishing barns, where they are fed until they weigh as much as 300 pounds. To help control the inevitable mountain of manure produced by pigs whose only tasks are to eat and grow, the finishing barns have slatted concrete floors. The slats allow much of the manure to flow into a large pit below rather than accumulate on the floor. When the pits are full, the manure must be pumped out.

When iso-wean pigs are first placed in the finishing barns, the slatted floors must be covered with mats to provide comfortable bedding and keep them warm. Once the

pigs reach an adequate size, the mats are removed or broken down to allow manure to flow through the floor. Because the rubber mats customarily used to cover the slats are large and heavy, the task of repeatedly installing and removing them can be burdensome.

In 2009, Bohnenkamp came across a Hog Slat advertisement for a lightweight, disposable wean-to-finish pig mat produced by USA Solutions under the trade name of "Compost-A-Mat." The advertisement stated that Compost-A-Mats are completely biodegradable and contain no resins or glues. Based on this information, Bohnenkamp believed the Compost-A-Mats to be superior to the cumbersome rubber mats he had been using and began purchasing them from Hog Slat. He asserts that the Hog Slat employees who sold him the mats, including Hargens, repeatedly assured him that the mats worked well and would not need to be removed because they would naturally decompose in the manure pits.

In 2016, Bohnenkamp began noticing that some pieces of the Compost-A-Mats he had used failed to decompose in the manure pits. The pieces began clogging the pits' agitator pumps, which caused a greater amount of solids to settle at the bottom of the pit. Both these factors made emptying the pits much more difficult and time consuming.

The undecomposed pieces of Compost-A-Mat also caused issues for RCB, an Iowa company hired by Bohnenkamp to pump manure from his hog pits and inject it into his or other farmers' cropland. RCB's equipment could not adequately shred the undecomposed Compost-A-Mat pieces that had accumulated in the pits, so its pumps and injector lines began to clog, limiting how effectively it could apply manure. RCB has tried to prevent clogging by screening for the undecomposed Compost-A-Mat pieces but has had limited success.

Bohnenkamp ceased using Compost-A-Mats in 2017, but undecomposed pieces of the mats have continued to clog, and limit the effectiveness of, his and RCB's pumping and fertilizing equipment.

On July 6, 2020, plaintiffs commenced an action against Hog Slat and USA Solutions in Iowa state court. The case was removed to this court based on diversity of

citizenship – as Hog Slat and USA Solutions are citizens of North Carolina and Minnesota, respectively, and plaintiffs are citizens of Iowa. Hog Slat moved to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). Case No. 20-cv-4043, Docs. 1, 4. Soon thereafter, plaintiffs filed an amended complaint raising additional claims against Hog Slat and USA Solutions, which Hog Slat again moved to dismiss. *Id.*, Docs. 12, 20.

Plaintiffs also filed a motion for leave to amend their complaint to join Hargens, who is a citizen of Iowa, as a defendant and remand the case to Iowa state court for lack of complete diversity. *Id.*, Docs. 13, 19. Chief United States Magistrate Judge Kelly K.E. Mahoney denied plaintiffs' motion, finding that the timing of the requested joinder, along with plaintiffs' failure to explain why Hargens had not been joined earlier, supported an inference that plaintiffs sought to join Hargens solely to destroy diversity jurisdiction. *Id.*, Doc. 26. Plaintiffs then voluntarily dismissed all claims against Hog Slat, and filed a stipulation of dismissal of all claims against USA Solutions, before the court could rule on Hog Slat's motion to dismiss. *Id.*, Docs. 27, 28.

Plaintiffs commenced this action in the Iowa District Court for Plymouth County on December 31, 2020, this time naming Hog Slat, USA Solutions and Hargens as defendants. Docs. 1, 3. On March 24, 2021, defendants removed the case to this court based on diversity of citizenship, claiming that Hargens, the only non-diverse defendant, was fraudulently joined for the purpose of defeating diversity jurisdiction. Doc. 1. Hog Slat again filed a motion to dismiss under Rule 12(b)(6) and plaintiffs filed an amended complaint. Docs. 6, 7. Plaintiffs also filed a motion to remand to state court, arguing that the court lacks diversity jurisdiction because the parties are not completely diverse. Doc. 10. Hog Slat filed a resistance on April 29, 2021, and plaintiffs replied on May 6, 2021. Docs. 13, 15.

### *III. DISCUSSION*

Under 28 U.S.C. § 1441, defendants may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." One such basis for removal is diversity of citizenship among parties to the action. 28 U.S.C. §§ 1332, 1441(b). A case may be removed based on diversity of citizenship when (1) the amount in controversy exceeds $75,000, (2) there is complete diversity between plaintiffs and defendants, meaning that no defendant is a citizen of the same state as any plaintiff, and (3) no defendant is a citizen of the state in which the case was brought. *Id.* §§ 1332, 1441(b); *Hubbard v. Federated Mut. Ins. Co.*, 799 F.3d 1224, 1227 (8th Cir. 2015). Complete diversity "must exist both when the state petition is filed and when the petition for removal is filed." *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011) (quoting *Ryan ex rel. Ryan v. Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001)). If a case is removed based on diversity of citizenship, but complete diversity does not in fact exist, the court lacks subject matter jurisdiction over the case and must remand it to state court. *See Hubbard*, 799 F.3d at 1226–27. Any doubts about the propriety of removal "should be resolved in favor of remand to state court." *Id.* (quoting *Knudson*, 799 F.3d at 975).

Defendants removed this case from state court alleging diversity jurisdiction. They acknowledge that complete diversity is absent on the face of plaintiffs' complaint because Hargens, like plaintiffs, is a citizen of Iowa. However, they argue that this court may nonetheless exercise diversity jurisdiction because Hargens was fraudulently joined as a defendant for the purpose of defeating diversity jurisdiction.

Under the fraudulent joinder[1] exception to the complete diversity rule, a district court may exercise diversity jurisdiction over a removed case lacking complete diversity

---

[1] Some courts and commentators have expressed that "fraudulent joinder" is somewhat of a misnomer because the removal at issue is based on a diversity-destroying defendant being named

4

if the plaintiff filed "frivolous or illegitimate claim[s] against a non-diverse defendant solely to prevent removal." *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010); *see also Chesapeake & O. R. Co. v. Cockrell*, 232 U.S. 146, 152 (1914) ("[A defendant's] right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."). To show that a non-diverse defendant was fraudulently joined, the defendants who removed the case must "prove that the plaintiff's claim[s] against the non-diverse defendant ha[ve] no reasonable basis in law and fact." *Hubbard*, 799 F.3d at 1227. If the removing defendants are able to do so, the court may disregard the non-diverse defendant's citizenship, dismiss it and retain jurisdiction over the case. *See Murphy v. Aurora Loan Servs., LLC,* 699 F.3d 1027, 1031 (8th Cir. 2012), *as corrected* (Nov. 28, 2012); *Com. Sav. Bank v. Com. Fed. Bank*, 939 F. Supp. 674, 680 (N.D. Iowa 1996); *see also Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009); *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006); *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999).

Before considering whether Hargens was fraudulently joined, I must address two preliminary points of contention. First, the parties disagree as to which of plaintiffs' pleadings – the original state court petition or the amended federal court complaint – I should analyze to determine whether plaintiffs' claims against Hargens have a reasonable basis in law and fact. Hog Slat argues that I should analyze only the original state court petition while plaintiffs argue that I should analyze the amended complaint. Second, the parties disagree as to whether I may consider plaintiffs' previous action against Hog Slat and USA Solutions in determining whether Hargens was fraudulently joined in this case. I will address these issues and then turn to the merits.

---

in an original state court complaint, not joined to the action. 13F Charles Alan Wright, et al., Federal Practice and Procedure § 3641.1 (3d ed. 2009). For that reason, some courts refer to this scenario as "improper joinder" or "procedural misjoinder." *Id*. Regardless of nomenclature, the substance of the analysis to determine whether a defendant was named in a state court action solely to destroy diversity is the same.

### A. Which Pleading Controls in the Fraudulent Joinder Analysis?

To determine whether a non-diverse defendant has been fraudulently joined, I must analyze the plaintiff's pleadings. The focus of this analysis is not to determine the strength or plausibility of plaintiff's claims against the diversity-destroying defendant, as it would be for a motion to dismiss under Rule 12(b)(6). *Knudson*, 634 F.3d at 980. The sole issue is whether the pleadings show that the plaintiff "'might' have a 'colorable' claim under state law against a fellow resident." *Wilkinson v. Shackelford*, 478 F.3d 957, 964 (8th Cir. 2007) (quoting *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1005 (8th Cir. 2006)). A claim is colorable if there is a reasonable basis in law and fact for asserting it. *Hubbard*, 799 F.3d at 1227.

In their state court petition, plaintiffs asserted three claims against Hargens: fraudulent misrepresentation, negligent misrepresentation and negligence. After the case was removed, however, plaintiffs filed an amended complaint containing only one claim against Hargens, fraudulent misrepresentation, and new factual allegations regarding her involvement in Bohnenkamp's purchases of Compost-A-Mats.[2] Due to these differences, the parties disagree as to which pleading I should examine to determine whether removal was proper due to fraudulent joinder.

In some ways, this amounts to a non-issue. When conducting a fraudulent joinder analysis, courts in this circuit have generally considered facts beyond the face of a plaintiff's complaint. *See Block v. Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011); *see also Heykants v. U.S. Bank Nat'l Ass'n*, No. 4:07-CV-00588, 2008 WL 11422051, at *3 (S.D. Iowa Apr. 23, 2008) (noting that the majority of district courts in this circuit look beyond the pleadings to determine whether a defendant was fraudulently joined and consider "any evidentiary materials filed in support of or opposing the motion

---

[2] Plaintiffs appear to also include Hargens under their breach of express warranty claim, as it is asserted "Against All Defendants." Doc. 7 at 6. However, because neither party has addressed that claim, I deem it to be irrelevant to the present matter and will not discuss it further.

to remand"). It appears that most of the changes plaintiffs made to the allegations against Hargens in their amended complaint are based on evidence already in the record, some of which was submitted with defendants' notice of removal.[3] I will consider such factual matters regardless of which pleading controls in the fraudulent joinder analysis.

Plaintiffs' other changes in the amended complaint focus certain allegations more directly at Hargens, rather than Hog Slat employees generally, to more clearly state the elements of a misrepresentation claim.[4] Defendants argue that this is purely an attempt to compensate for plaintiffs' inadequate pleading in their state court petition and to bolster their case for remand. How artfully and completely plaintiffs have pleaded the elements of misrepresentation against Hargens is not relevant to the question of whether she was fraudulently joined. The issue is whether the facts of the case, as understood from the face of the complaint and other evidence of record, show that plaintiffs might have colorable claim against Hargens under state law. *See Wilkinson*, 478 F.3d at 964.

For these reasons, it matters little which pleading the fraudulent joinder analysis is based on in this case. The facts and evidence relevant to determining whether plaintiffs' claims against Hargens have a reasonable basis in law and fact are the same regardless of which pleading is analyzed. Nevertheless, to establish a starting point and structure for this court's fraudulent joinder analysis, I will address the parties' dispute.

Hog Slat notes that this court has stated in previous fraudulent joinder cases that "a fundamental principle of removal jurisdiction is that whether subject matter

---

[3] For example, in the original petition plaintiffs appear to allege that Hargens was among the Hog Slot employees who made misrepresentations regarding Compost-A-Mats when Bohnenkamp began purchasing them in 2009. Doc. 3 at 3. As part of their notice of removal, defendants submitted an affidavit from Hargens stating that she did not begin working for Hog Slot until 2010. Doc. 2. Plaintiffs altered the allegations against Hargens in their amended complaint to reflect that fact. Doc. 7 at 4. Thus, even if the amended complaint is irrelevant to the fraudulent joinder analysis, the altered factual assertion therein is already part of the record and may be considered.

[4] *Compare* Doc. 3 at 3, *with* Doc. 7 at 4.

7

jurisdiction exists is a question answered by looking to the complaint as it existed at the time the petition for removal was filed." Doc. 13 at 4–5 (quoting *Foslip Pharms., Inc. v. Metabolife Intl., Inc.*, 92 F. Supp. 2d 891, 901 (N.D. Iowa 2000)). Because plaintiffs did not amend the complaint until after removal, Hog Slat argues that the propriety of removal based on fraudulent joinder should be determined by the claims and allegations of the original state court petition. *Id.*

Plaintiffs argue that the Eighth Circuit's amended complaint rule requires federal courts to "resolve questions of subject matter jurisdiction by examining the face of the amended complaint" because "an amended complaint supercedes [sic] an original complaint and renders [it] without legal effect." Doc. 15 at 1–2 (quoting *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005)). The only exception is when the complaint was amended involuntarily rather than voluntarily, in which case the court looks to the original state court complaint to determine the propriety of removal. *Id.* Because the decision to amend in this case was voluntary, plaintiffs argue that the propriety of removal based on fraudulent joinder must be determined by the amended complaint. *Id.* at 2.

There is no doubt that the amended complaint rule is a well-established principle of amended complaints. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007); *Acuity v. Rex, LLC*, 929 F.3d 995, 999 (8th Cir. 2019). There is also no doubt that the rule applies when determining the existence of federal jurisdiction after removal in some circumstances. *Cartier v. Wells Fargo Bank, N.A.*, 547 F. App'x 800, 804 (8th Cir. 2013); *In re Wireless*, 396 F.3d at 926–28. However, it does not apply here. Plaintiffs have not cited, nor have I found, any case in which the Eighth Circuit has applied the amended complaint rule when determining whether a plaintiff was fraudulently joined. Indeed, it appears the Eighth Circuit has never applied the amended complaint rule when the issue was whether removal from state court was proper. In the few cases it has applied the rule when resolving post-removal jurisdictional issues, it did so only when any dispute about the propriety of removal was resolved because the post-

removal amended complaint itself established clear grounds for exercising federal jurisdiction.[5] *See In re Wireless*, 396 F.3d at 926–28; *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1065–66 (8th Cir. 2000); *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1240–42 (8th Cir. 1995). This suggests that the amended complaint rule does not come into play after a case is removed unless, and until, federal jurisdiction is firmly established, either because the plaintiff creates jurisdiction by amending its complaint or removal is found to be proper.

While the Eighth Circuit has not squarely addressed the issue of which pleading controls in a fraudulent joinder analysis when a plaintiff has filed a post-removal amended complaint,[6] it has long recognized the general principle that a defendant's "right of

---

[5] Unsurprisingly, it is in that type of situation that applying the amended complaint rule in the post-removal context, and the creation of an exception for involuntary amendments, is most logical. When the jurisdictional basis for removing a case is disputed, a district court may assume jurisdiction temporarily to determine whether removal was proper. *See Murphy*, 699 F.3d at 1031; *In re Atlas*, 209 F.3d at 1066. If the plaintiff voluntarily amends the complaint post-removal in a way that clearly establishes federal jurisdiction, the dispute about whether removal was proper is settled and any future dispute regarding whether federal jurisdiction exists should be governed by the amended complaint. *See In re Wireless*, 396 F.3d at 926–28 (invoking the amended complaint rule to determine the existence of federal jurisdiction based on an amended complaint when defendant removed the case based on complete federal preemption of plaintiff's state law claims and plaintiff subsequently amended the complaint to bring claims under federal law). However, if the post-removal amended complaint establishing jurisdiction was court-ordered or otherwise involuntary, the Eighth Circuit recognizes that jurisdiction was created unwillingly and does not apply the amended complaint rule, looking instead to whether the removal itself was proper based on the state court pleadings in effect at the time of removal. *See In re Atlas*, 209 F.3d at 1067–68 (invoking the amended complaint rule, but determining the propriety of removal based on the original state court complaint due to the involuntary amendment exception, when defendant removed the case based on complete federal preemption of plaintiff's state law claims and plaintiff subsequently brought claims under federal law in an involuntary amended complaint); *Humphrey*, 58 F.3d at 1240–42 (same).

[6] In finding that a fraudulent joinder analysis must be based on the state court complaint in effect at the time of removal, this court and other district courts in this circuit have sometimes relied on *Anderson v. Home Insurance Co.*, in which the Eighth Circuit stated that "fraudulent joinder exists if '*on the face of plaintiff's state court pleadings*, no cause of action lies against the resident defendant.'" *See Kent*, 2012 WL 3582717, *2 n.2 (emphasis added) (quoting *Anderson v. Home*

9

removal" is controlled by "[t]he allegations of the complaint as set forth at the time the petition for removal was filed." *See Crosby v. Paul Hardeman, Inc.*, 414 F.2d 1, 3 (8th Cir. 1969) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537–38 (1939)). The vast majority of district courts in this circuit, including this one, have held that the fraudulent joinder analysis should be based on whichever pleading was in effect at the time of removal, even if the complaint was subsequently amended, without consideration of whether the amended complaint rule applies. *See, e.g.*, *Jimenez v. Firearms*, No. 4:11-CV-00571-JAJ-RAW, 2012 WL 12870225, at *2 (S.D. Iowa Sept. 11, 2012); *Kent v. Bank of Am., N.A.*, No. 11-CV-2315-JRT-LIB, 2012 WL 3582717, at *2 n.2 (D. Minn. Aug. 17, 2012), *aff'd*, 518 F. App'x 514 (8th Cir. 2013); *Wells' Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 157 F. Supp. 2d 1018, 1022 n.1 (N.D. Iowa 2001); *Palmquist v. Conseco Med. Ins. Co.*, 128 F. Supp. 2d 618, 621 (D.S.D. 2000); *but see Glazer v. Unum Life Ins. Co. of Am.*, No. 4:18-CV-390-JCH, 2018 WL 3421325, at *3–4 (E.D. Mo. July 13, 2018) (determining fraudulent joinder based on a post-removal amended complaint due to the amended complaint rule).

I find no valid reasons to depart from this court's practice of determining whether a non-diverse defendant was fraudulently joined by examining the pleading in effect at the time of removal. Thus, I will determine whether Hargens was fraudulently joined by examining plaintiffs' state court petition.

---

*Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983) (per curiam)); *see also Com. Sav. Bank v. Com. Fed. Bank*, 939 F. Supp. 674, 680 (N.D. Iowa 1996) ("Fraudulent joinder exists when the complaint in effect at the time of removal states no claim against the non-diverse defendant." (citing *Anderson*)). However, *Anderson* did not involve a post-removal amended complaint. *Anderson*, 724 F.2d at 83–84. Thus, its statement that fraudulent joinder is based "on the face of plaintiff's state court pleadings" is not dispositive on the issue of which pleading the court must analyze to determine fraudulent joinder when the complaint has been amended after removal.

## B. Is Plaintiffs' Prior Voluntarily Dismissed Case Relevant Here?

The parties' next dispute is whether the court may consider plaintiffs' prior action against Hog Slat and USA Solutions that was voluntarily dismissed and, specifically, Judge Mahoney's findings regarding the propriety of joining Hargens as a defendant to that case. Hog Slat argues that the procedural history of the dismissed case supports its argument that Hargens was fraudulently joined. It notes that plaintiffs chose not to name Hargens as a defendant in their original complaint, despite knowing of her involvement in Bohnenkamp's purchases, and moved to join her only after the case was removed to federal court. Judge Mahoney denied plaintiffs' motion to join, finding that the timing of the motion suggested they sought to destroy diversity jurisdiction. Plaintiffs then dismissed the case and refiled in state court, this time making sure to name Hargens as a defendant from the outset. Hog Slat argues that plaintiffs took this course of action solely to achieve what they could not do in the prior case – use a non-diverse defendant to prevent this case from being heard in federal court.

Plaintiffs disagree and argue that allowing the dismissed case to influence the court's fraudulent joinder analysis would be inappropriate. They argue that a voluntary dismissal nullifies all proceedings in a case, leaving the parties as if it had never been brought. Thus, pleadings, motions and findings in the prior case lost all legal significance when it was dismissed and have no bearing on whether removal in this case was proper. Plaintiffs also argue that Judge Mahoney's findings regarding Hargens' proposed joinder are irrelevant to the fraudulent joinder analysis. They assert that fraudulent joinder is determined by whether there is a reasonable basis for the claims against Hargens, not their motives for asserting them, and Judge Mahoney's findings evaluated only their possible motives for seeking to join Hargens.

As noted above, it is clear that the court may consider facts beyond the face of a plaintiff's complaint in determining whether a non-diverse defendant was fraudulently joined. *See Block*, 665 F.3d at 948. That means a defendant may point to any facts "tending to show . . . that the resident defendant is a sham or fictitious defendant" joined

11

to prevent removal. *See Morris v. E. I. Du Pont De Nemours & Co.*, 68 F.2d 788, 791, 793 (8th Cir. 1934). As such, I have no trouble concluding that the facts and allegations from the prior, voluntarily-dismissed case are fair game in considering whether Hargens was fraudulently joined in this case.[7] However, Hog Slat has failed to point to any facts

---

[7] There is no dispute that a voluntary dismissal nullifies the case being dismissed, but the nullity it provides is more jurisdictional and procedural than factual. *See Smith v. Dowden*, 47 F.3d 940, 943 (8th Cir. 1995); *In re Piper Aircraft Distrib. Sys. Antitrust Litig.*, 551 F.2d 213, 219 (8th Cir. 1977). In other words, although pleadings and orders in a voluntarily dismissed case generally are not binding on subsequent iterations of the case, nothing prohibits a party from pointing to facts and allegations in a prior voluntarily-dismissed iteration of a case as controvertible evidence supporting federal jurisdiction in subsequent iterations. *See Attilus v. Emblemhealth Administrators, Inc.*, 233 F. Supp. 3d 1341, 1346 (S.D. Fla. 2017) (finding that considering the pleadings from a prior voluntarily dismissed case to determine whether the court had jurisdiction based on complete federal preemption in a subsequent iteration was appropriate to prevent a plaintiff from "artfully disguis[ing] [her] claims to avoid federal jurisdiction"); *Deaver v. BBVA Compass Consulting & Benefits, Inc.*, No. 13-CV-00222-JSC, 2014 WL 2199645, at *4 (N.D. Cal. May 27, 2014) (finding the court could consider allegations made in a complaint from a prior voluntarily dismissed case to determine whether the amount in controversy for jurisdiction was met because of the rule allowing courts to look beyond the four corners of a plaintiff's complaint in determining that issue).

Allowing courts to consider such evidence helps prevent plaintiffs from abusing the Federal Rules of Civil Procedure. *See Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1214–15 (8th Cir. 2011) ("[Because] the right to remove an action which falls within the jurisdiction of the federal courts is a substantial right, the federal courts . . . should be astute not to permit devices to become successful which are used for the very purpose of destroying that right." (alteration in original) (quoting *Jones v. Mosher*, 107 F. 561, 564 (8th Cir. 1901))). It is well-settled that a plaintiff's voluntary post-removal actions generally cannot deprive the federal court of jurisdiction. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938) ("It uniformly has been held that in a suit properly begun in the federal court the change of citizenship of a party does not oust the jurisdiction."); *Thatcher*, 659 F.3d at 1214 ("[I]n a diversity action a plaintiff may not merely amend his complaint after removal to claim damages below the jurisdictional amount and deprive the federal court of jurisdiction."); *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 309 (8th Cir. 2009) (explaining that a court must deny a post-removal motion to join a non-diverse defendant when, among other things, the court finds that the purpose of the motion is to destroy diversity jurisdiction). However, some plaintiffs may attempt to reach the same outcome by voluntarily dismissing their case and refiling a complaint in state court that omits previously asserted facts or allegations that implicate federal jurisdiction. Allowing a court to consider these facts and allegations in determining whether jurisdiction exists in subsequent iterations of the case helps prevent plaintiffs from using voluntary dismissals as a tool to destroy a defendant's right to removal.

or allegations from the prior case that would tend to show fraudulent joinder in this case. For starters, Judge Mahoney's conclusions regarding plaintiffs' motion to join Hargens in the prior case were conclusions of a legal nature, not factual findings that might help this court determine whether it has jurisdiction. As legal conclusions, they were nullified and "carrie[d] down" with the prior case when it was voluntarily dismissed.[8] *See In re Piper*, 551 F.2d at 219.

Even if that were not so, Judge Mahoney's conclusions have no relevance to the question currently before the court. To prove fraudulent joinder, a defendant must show that the claims asserted against a non-diverse defendant lack any reasonable basis in law and fact. *Hubbard*, 799 F.3d at 1227. Courts have long recognized that a plaintiff's motives for adding a non-diverse defendant do not matter as long as the claims brought against that defendant have a reasonable basis in law and fact. *See Mecom v. Fitzsimmons Drilling Co.*, 284 U.S. 183, 189 (1931); *Morris*, 68 F.2d at 793; *Mattress Warehousing, Inc. v. Power Mktg. Direct, Inc.*, No. 08-CV-141-LRR, 2009 WL 395162, at *5 (N.D. Iowa Feb. 17, 2009). Judge Mahoney's ruling addressed plaintiffs' apparent motive in seeking to join Hargens, not the legal and factual basis for the claims plaintiffs sought to assert. The fact that plaintiffs decided not to raise claims against Hargens until the prior case was removed to federal court has no bearing on whether the claims they assert against her in this case have a reasonable basis in law and fact.

For these reasons, I will not consider Judge Mahoney's findings regarding plaintiffs' attempt to join Hargens in the prior case, or the facts upon which she reached those findings, in determining whether there is a reasonable basis for plaintiffs' claims against Hargens in this case.

---

[8] There is an exception for findings and decisions that are considered final for purposes of issue preclusion, as final decisions made before a case is voluntarily dismissed without prejudice may be binding in subsequent iterations of that case. *See Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007).

## C. Was Hargens Fraudulently Joined in this Case?

As noted above, the issue of whether Hargens was fraudulently joined will be determined by whether there is a reasonable basis in law and fact for plaintiffs' claims against her. Plaintiffs asserted three claims against Hargens in their original state court petition: fraudulent misrepresentation, negligent misrepresentation and negligence. However, in their motion for remand plaintiffs argue only that their fraudulent misrepresentation claim has a reasonable basis in law and fact. Thus, for purposes of evaluating fraudulent joinder, I will analyze only the fraudulent misrepresentation claim.

To establish fraudulent misrepresentation under Iowa Law, a plaintiff must establish each of the following elements:

(1) the defendant made a representation to the plaintiff,

(2) the representation was false,

(3) the representation was material,

(4) the defendant knew the representation was false,

(5) the defendant intended to deceive the plaintiff,

(6) the plaintiff justifiably relied on the truth of the representation,

(7) the representation was the proximate cause of the plaintiff's damages, and

(8) the amount of damages.

*Dier v. Peters*, 815 N.W.2d 1, 7 (Iowa 2012).

Plaintiffs allege that Hargens made several false representations to Bohnenkamp regarding the biodegradability of Compost-A-Mats by repeatedly telling him that the mats would break down quickly and would not need to be removed. Hog Slat argues there is no factual basis for plaintiffs' claim against Hargens because Bohnenkamp did not rely on representations made by her in deciding to purchase Compost-A-Mats. It argues that Bohnenkamp could not have relied on representations made by Hargens when he began

14

purchasing Compost-A-Mats because she did not work for Hog Slat at the time and had no connection to the advertisement containing representations that first piqued Bohnenkamp's interest in purchasing them. It also argues that Bohnenkamp could not have relied on representations Hargens made during later purchases because he had gained experience with the mats by then and had decided to continue purchasing Compost-A-Mats in light of that experience.

Plaintiffs do not dispute that Hargens played no role in Bohnenkamp's initial decision to buy Compost-A-Mats. However, they argue that there is a factual basis for finding that Bohnenkamp relied on Hargens' representations in deciding to *continue* purchasing Compost-A-Mats. They point out that the question before the court is not whether their claim against Hargens is plausible or will ultimately succeed, only whether there is a reasonable factual basis for asserting it. They argue that the pleadings and evidence in the record adequately show that Hargens made representations to Bohnenkamp regarding the qualities of Compost-A-Mats, that the representations were not true, and that they induced him to continue purchasing. According to plaintiffs, that is sufficient to show a colorable fraudulent misrepresentation claim under Iowa law.

Considering plaintiffs' pleadings and the evidence submitted to the court, I agree with Hog Slat that many factors raise doubts about the factual basis for Bohnenkamp's alleged reliance on Hargens' representations. For starters, there is the fact that Bohnenkamp purchased and used Compost-A-Mats at least three times before he began purchasing through Hargens. Doc. 2 at 4–6. It is difficult to believe that he relied on Hargens' representations, rather than his own experiences with Compost-A-Mats (which appear to have been positive up to that point), in deciding to continue purchasing them. *See Lockard v. Carson*, 287 N.W.2d 871, 878 (Iowa 1980) (explaining that reliance element must be evaluated in light of plaintiff's own information, experiences and ability to acquire information). It is also significant that plaintiffs do not allege that Hargens made any representations that had not already been made by other employees or Hog Slat's advertisement. They have failed to provide an explanation as to why it was

15

specifically Hargens' representations that induced Bohnenkamp to act after he had already received the same, or substantially the same, representations during multiple prior purchases.

For there to be a reasonable factual basis for the reliance element of plaintiffs' claim, however, they need not show that Hargens' misrepresentations were "the sole or even the predominant or decisive factor in influencing [Bohnenkamp's] conduct. . . . [or] that he would not have acted . . . as he did unless he had relied on the misrepresentation." Restatement (Second) of Torts § 546 cmt. b (1977). They need only show that the misrepresentations were "a substantial factor[] in influencing his decision." *Id.* Although there are many reasons to doubt that Bohnenkamp actually relied on Hargens' representations in deciding to continue purchasing Compost-A-Mats, the assertion that he did so is not unreasonable under the facts of the case. The representations Hargens allegedly made were material to Bohnenkamp's choice of whether to continue purchasing Compost-A-Mats.[9] And it is not wholly unreasonable for plaintiffs to assert at this stage that Hargens' statements about the mats' biodegradability remained a substantial factor in Bohnenkamp's choice to do so, even though he had received the same representations from other employees and had used the mats himself. Whether his reliance was otherwise justified under those circumstances is a matter generally left to the ultimate finder of fact. *See Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 739 (Iowa 2009). For these reasons, I cannot find that plaintiffs' fraudulent misrepresentation claim against Hargens lacks a reasonable factual basis.

Hog Slat next argues there is no legal basis for plaintiffs' claim against Hargens. It argues that it is clear Bohnenkamp did not rely on representations made by Hargens

---

[9] A plaintiff may recover damages only if the misrepresentation relied on is material. Restatement (Second) of Torts § 538 (1977). A misrepresentation is material if reasonable people "would attach importance to its existence or nonexistence in determining [their] choice of action in the transaction in question." *Id.* The biodegradability of Compost-A-Mats was certainly an important factor in Bohnenkamp's choice to buy them.

16

when he first purchased Compost-A-Mats. It also argues that plaintiffs have failed to allege that Bohnenkamp relied specifically on Hargens' representations, rather than those made by Hog Slat employees generally, in deciding to continue purchasing Compost-A-Mats.[10]

Plaintiffs counter Hog Slat's specificity argument with an affidavit from Bohnenkamp in which he asserts that his decision to continue buying was "[b]ased on Hargens' uttering" the alleged misrepresentations. Doc. 15-1 at 2. Plaintiffs also dispute Hog Slat's implication that Hargens cannot be held liable for fraudulent misrepresentation because she had no connection to Bohnenkamp's initial purchases. They argue that nothing prevents Hargens from being held liable for fraudulent misrepresentation if Bohnenkamp relied on her misrepresentations in deciding to *continue* purchasing Compost-A-Mats.

Under Iowa law, employees may be held personally liable for making fraudulent misrepresentations during the course of employment. *See Smith v. Peterson*, 282 N.W.2d 761, 766 (Iowa Ct. App. 1979) ("(A)ny person who by himself perpetrates a fraud, or who makes himself a party with others to the commission of a fraud, may be held personally liable for the natural consequences . . . flowing therefrom." (quoting *Riley v. Bell*, 95 N.W. 170, 171 (1903))). While Bohnenkamp may have previously relied on other employees' alleged misrepresentations, and had experience with the Compost-A-Mats before deciding to continue purchasing them through Hargens, this does not shield her from potential personal liability.

That being said, however, the Iowa Supreme Court has long recognized that an agent cannot be held personally liable for fraudulent misrepresentation "where it appears that he has acted in good faith within the general scope of his authority, and in making

---

[10] In its notice of removal, Hog Slat also argued that plaintiffs' fraudulent misrepresentation claim lacks a reasonable basis because the statute of limitations has expired. Doc. 1 at 9. Hog Slat did not renew this argument in resisting plaintiffs' motion to remand, however, and thus I deem that argument abandoned.

representations has acted simply as the mouthpiece of his principal, and has spoken, therefore, as his principal might have spoken, had he been personally present and acting in the premises." *Riley*, 95 N.W. at 171; *see also Kristerin Dev. Co. v. Granson Inv.*, 394 N.W.2d 325, 333 (Iowa 1986). Thus, for there to be a reasonable legal basis for plaintiffs' claim against Hargens, there must be a reasonable basis for finding that she made representations to Bohnenkamp in bad faith, personally committing fraudulent misrepresentation, and was not simply acting as Hog Slat's "mouthpiece" in making the representations. I find plaintiffs' allegations fall short on this issue.

Plaintiffs' allegations do not provide a reasonable basis for finding that Hargens acted as anything more than a "mouthpiece" for Hog Slat in making representations to Bohnenkamp regarding Compost-A-Mats. The representations in Hog Slat's advertisement are what first piqued Bohnenkamp's interest in purchasing Compost-A-Mats. There is no evidence that Hargens made any representation that was substantially different from the representations already made in Hog Slat's advertisement. Indeed, the fact that multiple Hog Slat employees repeated the same representations while discussing Compost-A-Mats with Bohnenkamp that were the same as, or derivative of, the advertisement's representations should have alerted him that they were speaking as agents of their employer rather than of their own accord. When this is the case, "the reliance element of a fraudulent misrepresentation claim cannot be satisfied" under Iowa law. *See Am. Fam. Serv. Corp. v. Michelfelder*, 968 F.2d 667, 673 (8th Cir. 1992) (citing *Kristerin*, 394 N.W.2d at 333). Iowa law does not recognize a plaintiffs' reliance on representations made by an agent when they were consistent with representations made by his or her principal as well. *See Kristerin*, 394 N.W.2d at 333.

There is also no reasonable basis for finding that Hargens acted in bad faith. The fact that Hargens appears to have made the representations as a mouthpiece of Hog Slot, rather than of her own accord, undercuts plaintiffs' allegations that she knew her representations were false and intended to deceive Bohnenkamp in making them. Plaintiffs have provided no additional basis for finding that when Hargens echoed the

Hog Slat representations, she knew they were false and intended to induce Bohnenkamp to continue buying Hog Slat's mats.

In short, to find a colorable fraudulent misrepresentation claim under Iowa law, there must be a reasonable basis to find that Hargens' made the alleged misrepresentations of her own accord, not as a mere mouthpiece for Hog Slat, and that she made them in bad faith. Plaintiffs' allegations and evidence do not adequately provide a reasonable basis for either finding. Because there is no reasonable basis to hold Hargens' personally liable for fraudulent misrepresentation under Iowa law, naming her as a defendant to this action constituted fraudulent joinder. Therefore, Hargens will be dismissed as a defendant and this court will retain diversity jurisdiction over this case.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' claims against defendant Kathleen Hargens are hereby **dismissed** and plaintiffs' motion (Doc. 10) to remand this action to state court is **denied**.

**IT IS SO ORDERED.**

**DATED** this 13th day of July, 2021.

_____
Leonard T. Strand, Chief Judge